IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MARLIN "MIKE" E. HILLENGA and SHERI C. HILLENGA, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 110073D |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal Conference Decision No. 83009891, dated December 2, 2010, increasing Plaintiffs' taxable income for tax year 2006. A trial was held in the Oregon Tax Court Conference Room, Salem, Oregon, on November 16, 2011. Carol Vogt Lavine, Attorney at Law, appeared on behalf of Plaintiffs. Sheri Hillenga (Plaintiff) testified on behalf of Plaintiffs. Darren Weirnick, Assistant Attorney General, appeared on behalf of Defendant. Peggy Ellis (Ellis), Auditor, testified on behalf of Defendant.

In its Motion to File First Amended Answer, filed October 5, 2011, Defendant stated that " 'the accuracy of the carryover of the 2004 NOL to 2006 [by Plaintiffs] may be an issue, given that many of the 2004 and 2005 deductions appear to be very similar in nature to those at issue in 2006[.]' " (Def's Mot for Leave to File First Am Ans to First Am Compl and Claim under 305.575 at 2, 3.) In their Reply filed November 15, 2011, Plaintiffs responded, stating that "the 2004 NOL did not arise from plaintiffs' Schedule C loss but that it arose due to itemized deductions claimed in the amount of $25,608." (Ptfs' Reply to First Am Ans to First Am Compl, at 3.) The parties' Amended Complaint and Amended Answer were filed.

/ / /

The parties submitted Joint Stipulated Exhibits SE1 through SE25. Plaintiffs' Exhibits 1 through 22 and Defendant's Exhibits A-1, A-2, A-3, A-23, C-2, C-3, C-4, C-5, C-7, C-8, C-9, C-11, C-14, C-16, C-18, D-1, E-2, E-3, E-6, E-7, E-8, E-9, E-10, E-11, E-12, E-14, E-15, E-16, E-17, E-19, E-20, E-21, and E-23 were admitted without objection. Defendant's Exhibits B-4, C-10, E-4, and E-13 were admitted with objection.

## I. STATEMENT OF FACTS

Plaintiffs, who have been married for 43 years, purchased their home in Coloma, California, in 1973. (SE13.) Plaintiff testified that Coloma is a town of 175 people and her home is a "3,000 foot country ranch" located "on one acre." She testified that "most people travel and no one is there on a consistent day to day basis to pick up [Plaintiffs'] mail." Plaintiff testified that Coloma is "where she was raised" and is her "roots."

Plaintiff testified that she was "gifted" by her great aunt and great uncle a house located in Ashland, Oregon, in 1976. Plaintiff testified that she and her husband purchased two houses in Ashland and one in Medford, Oregon, that are now "rentals," stating that they purchased those properties because "they were affordable." Plaintiff testified that after spending many years caring for Plaintiff's great aunt and great uncle, Plaintiffs made friends in the community, including a Presbyterian minister and local politicians, and concluded that with "three hospitals and the university" it is a "good place to live." Plaintiff testified that she and her husband are now registered to vote in California, but in the "early 2000s" they were registered to vote in Oregon because they wanted to support Oregon candidates for office. (*See* SE19.) Plaintiff acknowledged that in addition to the rental properties Plaintiffs own a building in downtown Ashland that houses a State Farm Insurance office. Plaintiff testified that Plaintiffs purchased that building in 1983.

Plaintiff testified that, even though she was born in Alameda, California, she has lived most of her life in Coloma, California. She testified that her husband was born in Iowa, and has two college degrees. Plaintiff testified that her husband's mother is 102 ½ years of age and lives in Iowa. Plaintiff testified that two children, including a son who is a minister in Santa Cruz, and two grandchildren live in California, another child lives in Connecticut, and the fourth child lives in Maryland. Plaintiff testified that she prepared wills for both herself and her husband dated January 1, 1997, stating that she and her husband are residents of California. (SE16, 17.)

Plaintiff testified that in 1991 Plaintiffs moved Plaintiff's mother from Coloma to a foster care facility in Ashland, Oregon, because they knew she would get proper care after Plaintiff's mother's California caregiver pushed Plaintiff's mother into a ravine and left her. Plaintiff testified that her mother passed away in 1998. After holding a memorial service in Ashland, Plaintiffs held a service for Plaintiff's mother and buried her on their Coloma property. Plaintiff testified that her dog and cat are buried on the Plaintiffs' Coloma property.

Plaintiff testified that she is a college graduate and has "been employed" as a bank auditor, manager of various retail operations, and for many years she has operated VMH Visual Communications with her husband. Plaintiff testified that VMH Visual Communications was started by her husband "in 1967" and is a "production, designing" company. (*See* SE1 at 9.) Plaintiff testified that VMH Visual Communications is based in California –"then and now." She testified that in 2006 VMH Visual Communications reviewed technical engineering proposals submitted by Space Systems/Loral (SS/L). Plaintiff testified that, in turn, VMH Visual Communications worked with a vendor, Livewire, a California company, to prepare technical illustrations and set the text for the SS/L proposal. Plaintiff testified that the driving distance from Ashland to Coloma is 400 miles and, if a "job" was received by VMH Visual

Communications when Plaintiff was in Oregon, she would take the job with her to Coloma and work on it in California.

In addition to VMH Visual Communications, Plaintiff testified that she worked with NASA to develop an "anti-shock garment." (*See* Ptfs' Ex 19.) According to an article in Health and Medicine, Plaintiff, "operating as VMH Visual Communications, assists Zoex [Corporation] in a marketing capacity and conducts public service demonstrations of the anti-shock garment." (*Id.*) Plaintiff testified that she and her husband travel to Europe to market and demonstrate the product. She testified that even though her husband has been diagnosed with Alzheimer's his "long term memory" is not affected and he participates in marketing the product.

Plaintiff testified that VMH Visual Communications keeps its records on "a cash method" of accounting. She testified that the cost of goods sold stated on the income tax returns includes "all costs related to SS/L" and "also expenses of marketing Zoex," the anti-shock garment. Plaintiff testified that the Zoex marketing expenses relate to "cold calls," made to introduce the product to the market. Plaintiff testified that for 2006 there were no "receipts" of income. She testified that there is no written contract between Plaintiffs and Zoex, only a "verbal agreement to market, demonstrate and promote" the anti-shock garment. Plaintiff testified that she had "no recollection if Plaintiffs have made any money" and "no idea if [Plaintiffs have] recovered expenses "over the years." Ellis testified that she disallowed the Zoex identified business expenses because she concluded that those activities "were not happening for profit" and she could not "tell if there were any sales" of the product.

Plaintiff testified that she and her husband have "numerous types of business cards." Those cards have either an Oregon or California post office box as the mailing address. Plaintiff admitted that the Zoex website lists Ashland, Oregon, as the mailing address. Plaintiff was

questioned about the numerous travel expenses, listing Ashland, Oregon, as their home address. (*See* Def's Ex C.) Plaintiff testified that when renting a car, if she used the Ashland, Oregon, address the address on her driver license would match the address she wrote on the car rental agreement.

Plaintiff testified that she and her husband have numerous bank accounts in California, Oregon, and Iowa. She testified that in accordance with the terms of the rental agreement, renters directly deposit monthly payments into Plaintiffs' Oregon bank account. (*See* SE15.) In response to a question about a check written to a California supplier, Livewire, Plaintiff testified that, even though the work was done for VMH Visual Communications, Plaintiff wrote a check on the Oregon account because "it had money in the account." (*See* Def's Ex C-2.) Plaintiff testified that Plaintiffs have post office boxes in Oregon and California. She testified that the Oregon post office box is the address most often used on invoices or promotional material because when they are traveling internationally someone "they trust" collects the mail and keeps them updated. Plaintiff was questioned about a VMH Visual Communications bank account at Umpqua Bank, Ashland, Oregon. (Def's Ex E-7.) She was questioned about a number of documents, including State Farm Bank credit cards, certificates of deposit, VMH Visual Communications Profit Sharing Plan, Delta, and American Express and First State Bank Individual Retirement Accounts that list the Ashland, Oregon, address for Plaintiffs. (Def's Exs E-17, E-19.)

Plaintiff testified that she and her husband surrendered their California driver licenses, stating that, even though Plaintiff could not remember the year, she did remember the circumstances. (Def's Ex E-2, E-3.) Plaintiff testified that because Plaintiffs were transporting her mother and her possessions to Oregon they registered a "van" in Oregon. Plaintiff testified

that when Plaintiffs "were stopped for a routine traffic violation," the police officer noticed that the driver had a California driver license and the vehicle was licensed in Oregon. Plaintiff testified that the police officer told "Plaintiffs that they should get Oregon driver licenses." Plaintiff testified they followed the police officer's advice and obtained Oregon driver licenses. Plaintiff testified that Plaintiffs recently (2011) turned in their Oregon driver licenses and got their "old" California "license number reinstated."

Plaintiff testified that Plaintiffs "collect cars." She testified that they own "more than a dozen." Plaintiff testified that the vehicles are licensed in Oregon and California. (*See* Def's Ex E-15.) She testified that a vehicle is usually licensed in the state where they purchase it. (*See* Ptfs' Ex 5.) Plaintiff referenced State Farm Insurance Companies Identification Cards, stating that a 1972 Volkswagen was insured by Plaintiffs for the period June 17, 2006, to December 17, 2006. (Ptfs' Ex 3.) Plaintiff was questioned about a Beaver Marquis Motorcoach that was purchased in Oregon and Plaintiffs' claimed mileage and depreciation business deductions. (Def's Ex C-3.)

Plaintiff testified that their income tax returns, federal and state, have been prepared for many years by Stan Fujikawa, a certified public accountant. For tax years 2001 through 2008, Plaintiffs filed Oregon state income tax returns, stating they were full-year residents and California Nonresidents or Part-Year Residents. (SE1, 3, 5; Def's Ex A-1.) Defendant asked Plaintiff why each of those returns, federal, Oregon and California, listed the home address as the post office box in Ashland, Oregon, for tax years 2004, 2005, 2006, 2007, and 2008. (*See* SE1, 3, 5, 7.) Plaintiff testified that the certified public accountant told them "it didn't matter" if they filed as Oregon residents even though they were California residents. Plaintiff testified that

/ / /

Plaintiffs filed Oregon amended state income tax returns for tax years 2007 and 2008. (SE2, 4.)

On those amended returns, the following explanation appeared:

> "INCOME TAX RETURN IS BEING AMENDED TO PROPERLY REFLECT THE TAXPAYERS' RESIDENCY STATUS. BOTH THE TAXPAYER AND SPOUSE WERE PART-YEAR RESIDENTS OF OREGON. THEY SPENT 83 [78] DAYS IN OREGON, 125 [152] DAYS IN CALIFORNIA, AND 157 [135] DAYS OUT OF THE COUNTRY. THEIR PRIMARY RESIDENCE IS IN CALIFORNIA."

(SE2-3; SE4-3.) Looking at the California Nonresidents or Part-Year Residents 2006 year return, Plaintiff was asked to read the responses filed to Part 1, Residency Information. (SE1-19.) It was noted that the response to each of the questions was "N/A," except question 6: "I owned a home/property in California?" and that question was answered "No" for both Plaintiffs. (*Id.*) Plaintiff acknowledged that responses to residency information questions on the California Nonresidents or Part-Year Residents returns for 2004 and 2005 were the same as those on the 2006 California Nonresidents or Part-Year Residents return. (SE7, 8.) Plaintiff testified that the Oregon auditor told Plaintiffs that they could not file a 2006 amended Oregon return. Ellis testified that Plaintiffs could have filed a 2006 amended Oregon return. According to Defendant's procedure, if a taxpayer files an amended tax return that agrees with the auditor's adjustment, then the return can be accepted by the auditor. (Ptfs' Ex 22.) However, if a taxpayer files an amended tax return that does not agree with the auditor's adjustments, then the auditor would "deny" the return. Plaintiff testified that she does not know if Plaintiffs filed amended California state income tax returns for tax years 2007 and 2008.

Plaintiff testified that she kept a "log book," tracking her appointments and submitted copies to Defendant's auditor. She testified that she was not "asked for clarification." Plaintiff testified that she put a "c" or "o" on a date when either she or her husband or both Plaintiffs were in California or Oregon. In response to the location designation on the calendar and receipts

showing a different location, Plaintiff testified that sometimes the "c" was changed to "o" when the "actual" location changed from the "planned" location, or someone may have purchased something for her even though she was not in that location. (*See* Ptf's Ex 13 at 3, 5.)

Plaintiffs dispute Defendant's adjustments to their 2006 Oregon state income tax return. Plaintiff testified that Plaintiffs are part-year residents of Oregon and Defendant erred in taxing Plaintiffs on their service income because none of it was earned in Oregon. Plaintiff testified that "no business" for VMH Visual Communications was performed in the Ashland home and there was no "sale of product sold to an Oregon customer." She testified that Plaintiffs do not "meet with potential customers in Oregon."

Plaintiff testified that both the California house and Oregon house are "home offices." (*See* Ptfs' Ex 16.) She testified that based on square footage a portion of each house was claimed as a business expense, "a home office." For the Coloma house, Plaintiff testified that Plaintiffs allocated 566 square feet of 3,118 total square feet as their personal living space. (Ptfs' Ex 16 at 2.) Plaintiff testified that receipts were provided to the auditor to substantiate the architect costs and other costs incurred for the addition to the Coloma home. (SE10 at 5; Ptfs' Ex 17, 21.) Plaintiff testified that a "separate stairway" was added to give "outside access" to the second foor addition. When asked, Plaintiff acknowledged that an exercise bike was located in the Coloma home office space, that a "1/2 kitchen" was claimed as a home office expense, the "supply closets" stored paper, ink, batteries, software for "multiple computers," and "the storage area" was used to store "prior year tax returns" and other "documentation." Plaintiff testified that the Ashland rental records are stored in Plaintiffs' Ashland home in addition to the Iowa rental records.

/ / /

Plaintiff testified that the First State Bank of Iowa Form 1099-INT, showing interest income from seven certificates of deposit was credited to the VMH Visual Communications Profit Sharing Plan. (SE10 at14; SE18.) Plaintiffs allege that Defendant erred when Defendant included that interest income in Plaintiffs' Oregon taxable income. (*See* Ptfs' Ex 18.)

Plaintiffs dispute Defendant's inclusion of a check from SS/L to Plaintiffs dated December 20, 2006, in Plaintiffs' 2006 business receipts. (SE10 at 1-2.) Defendant relied on a 2006 Form 1099 from SS/L, reporting total payments of $196,591. (*Id*.) Plaintiff testified that the Form 1099 prepared by SS/L "was not correct." She testified that the check dated December 20, 2006, was received by Plaintiffs in January 2007, and because Plaintiffs report their income on a cash basis that income was reported in 2007.

Plaintiff testified that she prepared the list of Plaintiffs' medical expenses and charitable donations claimed on their 2006 tax returns. (Ptfs' Ex 2.) She was asked to identify the state where the medical services were provided or the charity was located.

Plaintiff testified that Defendant disallowed various business expenses, including travel, car and truck, insurance, legal and professional, supplies, and repairs and maintenance. (SE10 at 3-13.) Plaintiff testified that she provided "sample receipts to substantiate all" claimed deductions. Plaintiff testified that she prepared a summary of business expenses and gave a copy to Defendant's auditor. (Ptfs' Ex 21.) Plaintiff was questioned about the business deduction of a personal liability insurance policy. (Def's Ex C-1 at 5.) Plaintiff was asked about travel log deductions for mileage to and from Ashland Hospital. With respect to telephone expense, Plaintiff testified that there is a land line and fax line in both Ashland and Coloma. She testified that there is "no cell service in Coloma." Ellis testified that Plaintiffs' Qwest "usage for the month" [February 17, 2006 to March 16, 2006] was "14 hours" and for the period from May 17,

2006, to June 17, 2006, monthly usage was 24 hours. (Ptfs' Ex 12 at 9, 15.) Plaintiff was asked about various shipment receipts showing Zoex Corporation and Plaintiffs' post office box in Ashland, Oregon. (Def's Ex C-14 at 3, 4, 6, 9, 12, 16, 19, 23.) Plaintiff was asked about certified mailing receipts addressed to SS/L and mailed from Ashland, Oregon. (Def's Ex C-16 at 4, 5.) Plaintiff was asked about an "internet provider," Connecting Point Computers, located in Ashland, Oregon. (Def's Ex C-8.) Plaintiff testified that she purchased various "supplies for engineering proposals." She testified that there is no computer support in Coloma and Connecting Point Computers has a "service department" that answers assistance requests.

Plaintiffs dispute Defendant's amended answer challenging Plaintiffs' claimed net operating loss carryover. (Def's Am Ans at 17.) Ellis testified that, based on the lack of information, the conference officer allowed Plaintiffs' claimed net operating loss carryover. Plaintiffs allege that the net operating loss carryover should be allowed because the net operating loss was a result of their adjusted gross income being less than their claimed itemized deductions. (Ptfs' Reply to First Am Ans to First Am Compl, attach Ptf's Ex 1 at 2, 3.) Ellis testified that Plaintiffs' net operating loss resulted from claimed business expenses on their "2004 Schedule C" and those expenses are "similar" to the 2006 "Schedule C expenses" that she disallowed. (SE21 at 3; SE1 at 5; Def's Ex D at 1 -3.)

Plaintiff testified that Plaintiffs never received a "kicker check" in 2006. (SE10 at 15.) Plaintiffs dispute Defendant's proposed adjustment to "bill back the overpaid kicker refund." (*Id*.) Ellis testified that Plaintiffs' "kicker refund" was applied to other Oregon state income tax liability accounts. Plaintiffs requested a transcript or other document that would show the 2006 kicker refund being applied to Plaintiffs' other tax liabilities.

/ / /

Plaintiffs challenge Defendant's assessment of "a 25 percent post-amnesty penalty." (SE9 at 3.) Ellis testified that the penalty was imposed "on taxes due for tax years 2007 and before because they [2007 tax year] qualified for amnesty," but did not "include" the 2007 tax year on an "amnesty application, or file or pay [the 2007 taxes] under the amnesty program. Chapter 710, Oregon laws 2009 (SB 880), OAR 150-305.100-(C)." (*Id.*)

Ellis testified that she has been employed by Defendant for four and one-half years as a Tax Auditor 1. She testified that the "department's charge" is to determine the "substantially correct income tax liability" of taxpayers. For a resident of Oregon, Ellis testified that interest income earned in a tax year must be reported in Oregon. Ellis testified that she does not know how Oregon taxes service income of a nonresident.

## II. ANALYSIS

Oregon imposes a state income tax on every resident of this state and every nonresident with Oregon-source income. ORS 316.037(1), (3).[1] Oregon defines a "resident" as "[a]n individual who is domiciled in this state * * *." ORS 316.027(1)(a)(A). Thus, residency is statutorily equated with domicile. Domicile is a common law concept composed of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.* (*dela Rosa*), 313 Or 284, 289, 832 P2d 1228 (1992) (citation omitted). Oregon Administrative Rule (OAR) 150-316.027(1)(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an

/ / /

/ / /

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2005.

absence."[2] Although an individual can have more than one residence, he "can have but one domicile." *dela Rosa*, 313 Or at 289 (citation omitted).

A.     *Domicile*

Thus, the question before the court is whether Plaintiffs changed their domicile from California to Oregon no later than 2006.

To effect a change of domicile, "three elements are necessary:  (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." *White v. Dept. of Rev.* (*White*), 14 OTR 319, 321 (1998). Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind.  Nevertheless, the whole aim of the inquiry is to discern the true intent." *Hudspeth v. Dept. of Revenue* (*Hudspeth*), 4 OTR 296, 298-99 (1971).  Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual." *Butler v. Dept. of Rev.* (*Butler*), TC-MD No 050801D, WL 2041284 at *4 (July 18, 2006). Factors contributing to a determination of domicile "include family, business activities[,] and social connections." OAR 150-316.027(1)(1)(a).

1.     *Residence in Oregon and California*

"[A] residence for purposes of the [three-part] test is simply an abode. * * * [A]n abode is any 'physical building, structure, or vehicle in which the taxpayer lives and sleeps.' " *Bleasdell v. Dept. of Rev.* (*Bleasdell*), 18 OTR-MD 354, 361 (2004).  There is no question that Plaintiffs had established a residence in Oregon by 2006.  Plaintiff testified that in 1976 her aunt "gifted"

---

[2] Unless otherwise noted, all references to the Oregon Administrative Rules (OAR) are to 2006.

Plaintiffs a house that they live in when in Oregon. Plaintiffs continued to own a house in California.

2. *Intent to abandon California domicile/ Intent to acquire an Oregon domicile*

Plaintiffs request that the court conclude that, even though they filed an Oregon full-year resident state income tax return for tax year 2006 (and for some tax years prior and subsequent) and California non-resident or part-year resident income tax return for tax year 2006 (and for some tax years prior and subsequent), they were not domiciled in Oregon in 2006. Plaintiff, who has professional experience as a bank auditor and successfully managed numerous businesses, testified that the income tax returns were prepared in error by Plaintiffs' certified public accountant who for many years prepared their income tax returns. Even though Plaintiff now asserts those returns were prepared in error, Plaintiffs signed those tax returns stating under penalties of perjury or false swearing that they examined the returns, including accompanying schedules and statements and to the best of their knowledge and belief the returns were true, correct, and complete. (SE1 at 2, 18.)

The timing of Plaintiffs' decision to revoke their full year resident filing status in Oregon was obviously triggered by Defendant's audit and proposed adjustments of Plaintiffs' Oregon state income tax return. (Ptfs' Post-Trial Mem at 12.) Plaintiff testified that in taking the actions Plaintiffs did, specifically (1) obtaining Oregon driver licenses, (2) canceling California driver licenses, (3) registering to vote and voting in Oregon (and not voting in California), (4) licensing numerous vehicles in Oregon, (5) owning residential and commercial rental properties in Oregon, (6) endorsing and financially supporting Oregon candidates for political office, (7) establishing banking and financial service relationships in Ashland, Oregon, (8) using a post office box address in Ashland, Oregon, as their business address and mailing address for tax

returns, (9) maintaining ties to the Ashland, Oregon, religious community, and (10) seeking medical treatment and other services including computer services in Oregon, Plaintiffs had no intention of abandoning their California domicile and establishing an Oregon domicile. Plaintiff testified that she would never abandon California as her domicile because her mother is buried on the property where they own a house. Plaintiff testified that, in addition to owning property in California, Plaintiffs own California licensed automobiles, maintain bank accounts in California, and in 2006 spent more days in California than Oregon.

This court has concluded that lingering connections to one state do not prevent the court from concluding that a taxpayer effected a change in domicile. In *Hudspeth*, the taxpayers

> "did not sell their home in Prineville, [Oregon], [] the husband continued his Oregon Elks Lodge membership, [] his Oregon voting registration remained on the books, [] he maintained a bank account in Prineville, [] he paid dues at the golf club in Prineville, [] he purchased no home in * * * New Mexico, and made use of a mobile home in * * * Colorado."

*Hudspeth*, 4 OTR at 299. The taxpayer-husband in *Hudspeth* testified that he had tried to sell his Oregon home but found no takers, that he "did not vote by absentee ballot during his absence," and that he "had no time to take care of or give consideration to minor matters such as shifting bank accounts, cutting down on dues payments, and the like[.]" *Id*. at 300. The court accepted his explanations and concluded that the taxpayers had effected a change of domicile. *Id.* at 301.

Plaintiffs have the burden of proving by a preponderance of the evidence that they were not domiciled in Oregon in tax year 2006 and had not "effected a change of domicile" from California to Oregon. ORS 305.427. Like many taxpayers, Plaintiff confuses the legal test for domicile with a belief that there is a requirement to abandon ownership of property in another state. There is no such requirement that Plaintiff sell her California property, leaving her mother buried on the property, in order to be domiciled in Oregon.

As previously stated, domicile is determined by factors, including "family, business activities[,] and social connections." OAR 150-316.027(1)(1)(a). Given Plaintiffs' acknowledged substantial business and social connections to Oregon as listed above, Plaintiffs have not proven that they were not domiciled in Oregon. In 2006, Plaintiffs' professional and personal connections to Oregon were more substantial than their connections to California, strongly supporting the conclusion that Plaintiffs were domiciled in Oregon.

B.      *Proposed Adjustments*

It is a well settled principle that "[d]eductions are strictly a matter of legislative grace, and a taxpayer must meet the specific statutory requirements for any deduction claimed." *Gapikia v. Commissioner*, 81 TCM (CCH) 1488 (2001) (citations omitted). "Taxpayers are required to maintain records sufficient to substantiate their claimed deductions." *Id*. For example, IRC § 274 imposes strict substantiation of expenses for travel, meals and entertainment, and gifts, and "with respect to any listed property (as defined in section 280F(d)(4))[.]"

The issue is whether Plaintiffs' claimed expenses are ordinary and necessary. "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev*., TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Rev*., 4 OTR 302 (1971)).

Plaintiffs provided little, if any, documentary evidence to challenge Defendant's proposed adjustments to their reported federal form Schedule C income and expenses. However,

for one proposed adjustment there is adequate evidence to support Plaintiffs' allegation that the adjustments are incorrect. With respect to the $15,423 interest paid to VMH Visual Communications Profit Sharing Plan, the court agrees with Plaintiffs that the interest should not be included in Plaintiffs' taxable income.

Plaintiffs provided no evidence to the court to substantiate claimed cost of goods, specifically, that a statement of accounts received from Perfectex Plus LLC addressed to Plaintiff and referencing ZOEX was an allowable expense, given the lack of evidence showing that ZOEX is a for profit business or evidence that the expense was incurred for VMH Visual Communications. (Def's Ex C-2 at 11.) Plaintiffs provided little, if any, evidence showing a qualified business use with respect to the other Schedule C claimed deductions that were disallowed by Defendant. For example, Plaintiffs' claimed business use of their California residence, stating that of the 3,118 gross living square footage Plaintiffs' personal use was limited to 566 square feet, including one-half of the kitchen, two bedrooms, living room, and one bathroom. (Def's Ex C-1 at 20.) Plaintiffs provided no evidence substantiating their business use, including dates of use for the rooms labeled as conference rooms and the kitchen use for meetings with clients in their home.

In its amended answer, Defendant alleged that Plaintiffs' net operating income loss carried forward to tax year 2006 should not be allowed, even though Defendant previously determined during the audit that it was an allowable deduction. Plaintiffs allege that Defendant "failed to make a *prima facie* showing that plaintiffs were not entitled to carry forward their 2004 NOL to their 2006 tax return." (Ptfs' Post-Trial Mem at 19.) Defendant alleged, but did not substantiate, that Plaintiffs "lack adequate substantiation for at least $9,547 in expenses claimed on the 2004 Schedule C, or, in the alternative, at least $9,547 in such expenses are

nondeductible." (Def's First Am Ans to First Am Compl and Claim under ORS 305.575 at 5, 6.) The court agrees with Plaintiffs that Defendant failed to meet its burden of proof and the court allows Plaintiffs' claimed 2004 net operating loss carry over.

With respect to the assessed penalties and kicker refund, Plaintiffs have not proven that the penalties were imposed contrary to law or that the kicker refund was not properly applied or calculated. Plaintiffs requested a transcript from Defendant and that transcript may provide additional information about the application of Plaintiffs' kicker refund.

### III. CONCLUSION

Based on the testimony and evidence, the court concludes that Plaintiffs were domiciled in Oregon in tax year 2006. Plaintiffs engaged in substantial business and personal activities in Oregon in contrast to California. For the tax year at issue, Plaintiffs' connections to Oregon were more numerous and permanent than their connections to California. Plaintiffs adequately substantiated their claim that interest in the amount of $15,423 paid to VMH Visual Communications Profit Sharing Plan should not be included in their taxable income. Plaintiffs failed to carry their burden of proof with respect to claimed business deductions, assessed penalties, and application of the kicker refund. Defendant failed to carry its burden of proof with respect to its disallowance of Plaintiffs' net operating loss carry forward. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

IT IS FURTHER DECIDED that Plaintiffs' 2006 taxable income should not be increased for interest in the amount of $15,423 paid to VMH Visual Communications Profit Sharing Plan.

IT IS FURTHER DECIDED that Plaintiffs failed to substantiate for the court the cost of goods and other Schedule C claimed deductions that were challenged by Defendant.

IT IS FURTHER DECIDED that Defendant failed to carry its burden of proof that Plaintiffs' claimed net operating loss carry forward from tax year 2004 to 2006 should be disallowed.

IT IS FURTHER DECIDED that Plaintiffs have not proven that Defendant improperly assessed penalties contrary to the law or improperly credited or calculated Plaintiffs' 2006 kicker refund.

Dated this ___ day of March 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on March 9, 2012. The Court filed and entered this document on March 9, 2012.*